UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 07-74-GWU


KEVIN ROGERS,                                                                PLAINTIFF,


VS.                              **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                           DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Disability Insurance Benefits (DIB).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled.  If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
      claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities?  If yes, proceed to
      Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
      404.1520(c), 404.1521, 416.920(c), 461.921.

1

07-74  Rogers

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1)

3

> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

07-74  Rogers

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In

6

such cases, the agency may be required to consult a vocational specialist.  <u>Damron</u> <u>v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley  v. Secretary of</u> <u>Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Kevin Rogers, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease of the lumbar spine and a depressive disorder.  (Tr. 16).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Rogers retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 18-24).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person with the plaintiff's history of semiskilled work with no transferable skills could perform any jobs if he were limited to "light" level exertion, with a requirement to alternate sitting and standing, and also had the following non-exertional restrictions.  (Tr. 268).  He: (1) could not lift overhead; (2) could not work around hazards, heights, or dangerous machinery; and (3) would be limited to low stress, entry-level, simple, repetitive

tasks with no strict time or production requirements, no close interaction with others, and no work with the public. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the Dayton/Springfield/Cincinnati, Ohio, metropolitan statistical area. (Tr. 268-9).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Mr. Rogers alleged disability due to back and leg pain which had started after a work-related accident in 2001. (Tr. 65, 245-6). He also described depression and moodiness, for which he was seeing a behavioral health counselor. (Tr. 247-8).

The plaintiff's primary argument on appeal is that the opinion of one of his treating physicians, Dr. Thomas Goodall, was improperly rejected by the ALJ. The court agrees.[1]

The plaintiff submitted office notes showing that Dr. Goodall, a board certified neurosurgeon (Tr. 150), treated him regularly between November, 2002 and September, 2005. (Tr. 136-44, 210-13). He was referred by another physician, Dr. Wayne Woodard, who had obtained an EMG study of the right lower extremity in October, 2002 which had been described as abnormal, with evidence of "axonal

---

[1]A family physician, Dr. Paul Martin, also submitted a functional capacity assessment form but the ALJ reasonably declined to give this opinion controlling weight because the physician explicitly based his opinion on reports from other doctors, and even said that they could best determine his "disability status." (Tr. 185-94).

polyneuropathy with both sensory and motor involvement." (Tr. 118). The radiologist suggested consideration of right L5 radiculopathy superimposed on generalized polyneuropathy. (Id.). After other conditions were ruled out, Dr. Woodard noted that it was likely the plaintiff had a significant disc injury which was causing his right lower extremity symptoms, that he be evaluated by a neurosurgeon for further treatment options, and that he be off work until the condition was "more resolved." (Tr. 126).

Dr. Goodall reviewed the EMG and his physical examination showed decreased sensation to pinprick along the L4-L5 distribution on the right, with positive straight leg raising at 60 degrees and, initially, forward flexion of 80 degrees and 10 degrees extension. (Tr. 144). He also noted "moderate paraspinal reactivity" in the lumbar region and edema and chronic pigment changes of the right lower extremity. (Id.). Eventually, an MRI of the lumbar spine was obtained in March, 2004, showing multilevel disease without significant neural compression, although there was a small right lateral protrusion at L3-4, with an annular tear which could irritate the right L3 nerve root, in the opinion of the radiologist. (Tr. 140). Shortly afterwards, Dr. Goodall noted straight leg raising limited to 30 degrees on the right and 10 degrees on the left, and forward flexion restricted to 30 degrees with 10 degrees extension. (Tr. 139). He interpreted the MRI as showing a disc herniation. (Id.). He continued to note extremely limited range of motion, with

forward flexion being limited to 30 or 40 degrees, in his subsequent office notes. (E.g., 136-8, 210-13).  He noted that the plaintiff's claim was "in litigation" and further treatment, including potential surgery, was "on hold."  (Tr. 211, 213).  No kind of treatment was being authorized.  (Tr. 210).

Dr. Goodall completed a functional capacity assessment on December 27, 2004, limiting Mr. Rogers to lifting five pounds occasionally and frequently, standing and walking one or two hours in an eight-hour day (no more than 15 minutes without interruption), sitting six to eight hours (no more than 30 minutes without interruption), never climbing, balancing, stooping, crouching, kneeling, or crawling, having a limited ability to reach, handle, push, pull, and work around heights, temperature extremes, and humidity.  (Tr. 145-9).  He described the plaintiff's problems as strain of the hip or thigh, lumbar strain, lumbar radiculopathy, and lumbar disc protrusion, and also cited a "positive" EMG and MRI.  (Tr. 145, 150). He felt that it was improbable that the plaintiff could do either sedentary or light work on a sustained basis.  (Tr. 149, 151).  He opined that, based on physical impairments, it was unlikely that Mr. Rogers could meet normal standards of work productivity or complete a normal workday or workweek without interruption from psychological and/or physical symptoms and perform at a consistent pace without unreasonable numbers and length of rest periods.  (Tr. 153-4).

07-74  Rogers

The ALJ rejected Dr. Goodall's opinion because he felt that it was not supported by significant corresponding clinical findings.  (Tr. 19).  Instead, he generally accepted the opinion of state agency medical consultants, with certain additional restrictions on workplace hazards and a sit/stand option.  (Id.).

The opinion of a treating physician such as Dr. Goodall is entitled to controlling weight if it is supported by objective evidence.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985).  While the opinion of a non-examining source may be accepted over that of an examiner, the non-examiner must have had the benefit of a review of the entire record and clearly stated the reasons for his difference of opinion.  Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).

In the present case, the state agency sources completed their opinions on September 10, 2003 and April 2, 2004 (Tr. 123), well before all the evidence was available, and before Dr. Goodall gave his opinion.  As a result, their opinions cannot serve as substantial evidence to overcome the opinion of the treating source.  Moreover, while the ALJ dismissed Dr. Goodall's opinion as lacking significant corresponding clinical findings, the neurosurgeon consistently noted an extremely limited range of motion; he described the EMG and MRI as "significant" and an addition to "positive" physical findings.  (Tr. 211).  Under the circumstances, this is not a case in which the opinion of a treating physician can be dismissed without evidence from a medical source with access to all the evidence.  The ALJ

11

07-74  Rogers

also asserted that there was no evidence to support the plaintiff's statement that Dr. Goodall had discussed surgery, and that Dr. Goodall had not even recommended physical therapy.  (Tr. 21).  Dr. Goodall's office notes include a notation that litigation over the plaintiff's injury was preventing any further treatment "including potential surgery." (Tr. 211).[2]

The decision will be remanded for further development of the plaintiff's residual functional capacity.

This the 28th day of December, 2007.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**

---

[2]While some of Dr. Goodall's restrictions were presented to the VE as an alternative hypothetical question, the VE's testimony identified only 550 jobs in the region which such a person could perform.  (Tr. 270).  It is not clear that this would be a significant number.  Moreover, no national level jobs were given, and it is questionable whether the area of Dayton/Springfield/Cincinnati, Ohio, represented the region of Stanton, Kentucky in which the plaintiff lived at the time of the hearing and of the decision.  (Tr. 11, 248).